IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LARRY TOTTEN et al,                           No    C-03-5030 VRW

    Plaintiffs,                              ORDER

    v

BLAIR EXCAVATORS, INC et al,

    Defendants.
_____/

        On November 12, 2003, plaintiffs sued for damages and injunctive relief under the Employee Retirement Income Security Act (ERISA), 29 USC §§ 1001 et seq, for an alleged breach of a collective bargaining agreement.  Doc #1.  On April 13, 2005, plaintiffs moved pursuant to FRCP 25(a)(1) to substitute Deborah Jean Blair ("Deborah Blair") for defendant Victor A Blair, who apparently died shortly after being served in August 2004.  Doc ##24, 36-1.  Plaintiffs stated that the decedent "was survived by his wife, Deborah Jean Blair" and that the motion sought "an order substituting Deborah Jean Blair as a defendant in place of the deceased as successor in interest to the income and debts at issue in this case."  Doc #36-2.  Deborah Blair did not respond to the

motion to substitute, and the court ordered her to show cause in writing by June 13, 2005, why the motion should not be treated as unopposed. Doc #38. The court received no response to the order to show cause.

On June 14, 2005, the court denied without prejudice plaintiffs' motion to substitute because plaintiffs did not properly serve the motion on Deborah Blair pursuant to FRCP 4. Doc #40. See FRCP 25(a)(1) (a motion under this provision must "be served * * * in the manner provided in Rule 4 for the service of a summons."). The court admonished plaintiffs "that it will not extend the time for service under Rule 4(m), and a failure to effect service within 120 days of the April 13, 2005, filing of plaintiffs' motion to substitute will result in dismissal of the claims against Victor Blair pursuant to the third sentence of FRCP 25(a)(1)." Doc #40 at 3-4.

On August 11, 2005, plaintiffs' counsel, Andrea J Kirkpatrick, filed a declaration detailing the various attempts at service on Deborah Blair before and after the court's June 14, 2005 order. Doc #41. On November 15, 2005, plaintiffs again moved for "an order substituting the surviving spouse, Deborah Jean Blair, in place of the deceased defendant, Victor A Blair[,] in the action filed herein." Doc #42.

Before the court can revisit whether plaintiffs have satisfied FRCP 4's service requirements, the court must determine whether plaintiffs' claims against Victor Blair survived his death. See FRCP 25(a)(1) ("If a party dies and <u>the claim is not thereby extinguished</u>, the court may order substitution of the proper parties." (emphasis added)). Although plaintiffs assume that

2

1  California law governs this issue (Doc ##36-2, 42), "[w]hether or
2  not such a claim, based upon federal law survives the death of a
3  claimant, is a question of federal law exclusively." Heikkila v
4  Barber, 308 F2d 558, 561 (9th Cir 1962).  See also Smith v No 2
5  Galesburg Crown Fin Corp, 615 F2d 407, 413 (7th Cir 1980); County
6  of Oakland by Kuhn v City of Detroit, 784 F Supp 1275 (ED Mich
7  1992); Continental Assur Co v American Bankshares Corp, 483 F Supp
8  175 (ED Wis 1980); Khan v Grotnes Metalforming Systems, Inc, 679 F
9  Supp 751, 756 (ND Ill 1988).  And under federal common law,
10 although actions that are penal in nature die when a party does,
11 Schreiber v Sharpless, 110 US 76 (1884), actions that are remedial
12 can survive that party's death.  See Riggs v Govt Employee
13 Financial Corp, 623 F2d 68, 70-72 (9th Cir 1980); United States v
14 Land, Winston County, 221 F3d 1194, 1197 (11th Cir 2000).  The
15 Ninth Circuit has on numerous occasions noted ERISA's remedial
16 nature.  See, e g, Cleghorn v Blue Shield of California, 408 F3d
17 1222, 1225 (9th Cir 2005) (finding the "intended exclusivity of the
18 ERISA remedial scheme" to preempt state causes of action).
19 Accordingly, plaintiffs' claims against Victor Blair would survive
20 against a properly substituted party.

21        Next, the court must determine whether Deborah Blair is a
22 proper party for substitution.  In the Ninth Circuit, a proper
23 party is a "legal representative[]" of the decedent — the executor
24 or administrator of the decedent's estate.  Mallonee v Fahey, 200
25 F2d 918, 919 (9th Cir 1952).  Additionally, other courts have held
26 "that the distributee of [the] distributed estate is a 'proper
27 party' for substitution * * *."  McSurely v McClennan, 753 F2d 88,
28 99 (DC Cir 1985).

3

Plaintiffs did not provide any proof in their motion or supporting papers that Deborah Blair was the executor, administrator or distributee of Victor Blair's estate. In fact, one of the service papers in plaintiffs' August 11, 2005, filing suggests that Deborah Blair "has been divorced from [Victor Blair] for 7 years [and] has no idea as to his whereabouts." Doc #41, Ex D at 1. That Deborah Blair might have been divorced from Victor Blair at the time of his death could explain why plaintiffs have been unsuccessful in serving her, if she reverted to her maiden name or remarried. And even if Deborah Blair were married to Victor Blair when he died, that fact alone does not warrant substitution. See Graham v Henderson, 224 FRD 59, 64-65 (ND NY 2004) (finding substitution improper where plaintiff established nothing more than a marital relationship between decedent and person to be substituted). Hence, the court harbors serious reservations whether Deborah Blair is a proper party to be substituted for Victor Blair.

Accordingly, the court ORDERS plaintiffs to show cause on or before August 28, 2006, why plaintiffs' claims against Victor Blair should not be dismissed because Deborah Blair is not an executor, administrator or distributee of Victor Blair's estate.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge

4